UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

JEVONTAYE TAYLOR                                                      PLAINTIFF

v.                                              CIVIL ACTION NO. 5:23-CV-P159-CRS

DEVON CANUP                                                          DEFENDANT

## MEMORANDUM OPINION

Plaintiff JeVontaye Taylor, a prisoner at the Kentucky State Penitentiary (KSP), proceeding *pro se* and *in forma pauperis*, initiated this *pro se* 42 U.S.C. § 1983 action. The complaint is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

## I. STATEMENT OF CLAIMS

Plaintiff sues KSP Corrections Officer Devon Canup in his official and individual capacities. His claim arises from an incident on December 7, 2022, in which Plaintiff alleges that Defendant applied force maliciously and sadistically to cause him harm in violation of the Eighth Amendment. Plaintiff states that on that date, he had informed Defendant that the cold water in his cell's sink was not working and requested to move cells, but Defendant was not helpful in addressing the issue. Plaintiff further states that later that day Defendant returned while Plaintiff was eating an apple in his cell and told him that he needed to uncover his cell's windows, which Plaintiff had covered since Defendant had last been there. According to the complaint, Plaintiff responded, "you denied me the supervisor and my sink cold water don't work get the supervisor and continued eating my apple. [Defendant] asked me again to uncover my windows. I said get the supervisor. [Defendant] opened the tray slot deployed oc pepper spray." Plaintiff states that,

in response, Plaintiff threw the apple and began wiping his face with his shirt at which point Defendant deployed the oc spray again, striking Plaintiff in his back.  Plaintiff alleges that he was ordered to, and did, back up to the door, where wrist restraints were applied, and that he had assumed the kneeling position as ordered when Defendant "deployed taser striking me in my back for no reason."

Plaintiff states that officers took him to be seen by a nurse.  Attached to the complaint is a copy of a report signed by Nurse Watkins after the incident which details that, when called to decontaminate and remove taser probes from Plaintiff, he was agitated, he ambulated without difficulty, his respirations were even and unlabored, and no cough or distress was noted.  It further reflected that two taser barbs were removed from his upper back, without difficulty and with minimal bleeding, and that his vitals were within normal limits "considering circumstances."  That report also records that Plaintiff accepted only decontamination of his eyes, which were "flushed with copious amounts of cool water."

According to the complaint, a disciplinary investigation ensued, and Plaintiff was charged with a "Category 7-1" violation, found guilty, and penalized with 30 days restrictive housing and loss of 730 good-time days; however, on review, the KSP Warden reduced the category he was charged with, and Plaintiff received 15 days and no good-time loss.

As relief, Plaintiff asks for compensatory and punitive damages and "improve personal safety."

Among the attachments to the complaint are a copy of the disciplinary report (Parts I and II) and the disciplinary appeal.  Part I of the report, signed by Defendant, describes Defendant deploying the spray, placing the wrist restraints, and ordering Plaintiff into the kneeling

compliance position.  It also records that the apple thrown by Plaintiff almost hit Defendant and another officer.  It does not record that Plaintiff was tased.

Part II of the report records that during the investigation, when asked by an investigating officer why he had covered his windows, Plaintiff responded, "I ain't got no comment and I got shot in my back in the compliance position with my hands behind my back."  The report also documents that Defendant and another officer who was present stated during the investigation that Defendant sprayed Plaintiff because he refused to comply with orders and that Defendant deployed the taser because Plaintiff "was turning around to spit on us."

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915A(b)(1) and (2).  When determining whether a plaintiff has stated a claim upon which relief may be granted, the Court must construe the complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true.  *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002).  While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### A. Official-capacity claim

"[O]fficial-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'"  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)

3

(quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)).  A state, its agencies, and state officials sued in their official capacities for monetary damages are not "persons" subject to suit under § 1983.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Further, the Eleventh Amendment acts as a bar to claims for monetary damages against a state, its agencies, and state employees or officers sued in their official capacities.  *Kentucky v. Graham*, 473 U.S. at 169.  Therefore, the official-capacity claim for money damages against Defendant, an employee of the Commonwealth of Kentucky, must be dismissed for failure to state a claim upon which relief may be granted and for seeking monetary relief from a defendant who is immune from such relief.

### B. Individual-capacity claim

Plaintiff alleges that Defendant sprayed him after he refused to uncover his windows as ordered to do and after he threw an apple.  According to Plaintiff, he was then ordered to, and did, back up to the door, where wrist restraints were applied, and assumed the kneeling position when Defendant tased him.  Although Plaintiff alleges that Defendant tased him "for no reason," he does not allege that he did not attempt to spit at Defendant while in the compliance position.  Nor does he allege any deleterious effects from being sprayed or tased.

The Eighth Amendment prohibits punishments which "'involve the unnecessary and wanton infliction of pain.'"  *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).  An Eighth Amendment claim has objective and subjective components.  *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014).

The objective component requires that the use of force be more than *de minimis*, *see Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992), but the Supreme Court has cautioned that a "significant injury" is not a threshold requirement for sustaining an excessive-force claim.  *See*

*Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam); *Johnson v. Sootsman*, 79 F.4th 608, 616 (6th Cir. 2023).

The subjective inquiry of an excessive-force claim focuses on "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Hudson*, 503 U.S. at 6 (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). Ultimately, prisons have a legitimate interest in maintaining security, order, and in having prisoners obey orders. *Bell v. Wolfish*, 441 U.S. 520, 560 (1979); *Caldwell v. Moore*, 968 F.2d 595, 599–601 (6th Cir. 1992). "Corrections officers do not violate a prisoner's Eighth Amendment rights when they apply force 'in a good-faith effort to maintain or restore discipline.'" *Roberson v. Torres*, 770 F.3d 398, 406 (6th Cir. 2014) (quoting *Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004)).

Plaintiff has not alleged that the force used by Defendant was more than *de minimis*. *See*, *Jennings*, 93 F. App'x at 725 (upholding dismissal of Eighth Amendment claim of prisoner sprayed with pepper spray after disobeying repeated direct orders resulting only in discomfort "in the ordinary fashion of persons exposed to pepper spray"); *Alexander v. Ojala*, No. 17-2357, 2018 WL 5905588, at *3 (6th Cir. May 29, 2018) (finding that the use of a taser to stop an altercation between prisoners, which resulted in pain, muscle cramps, and difficulty sleeping, was *de minimis* despite plaintiff's assertion that he had stopped actively fighting when he was tased); *Guile v. Spence*, No. 2:19-CV-138, 2022 WL 658711, at *4 (W.D. Mich. Feb. 4, 2022) (finding that where inmate suffered "a hole in his back and a bit of soreness over the next few days" from being tased during a fight initiated by another inmate, more than a *de minimis* use of force was not present), *report and recommendation approved*, No. 2:19-CV-138, 2022 WL 656653 (W.D. Mich. Mar. 4, 2022).

Furthermore, it is clear from the complaint that Defendant's discharge of the spray was in response to Plaintiff's non-compliance with direct orders and throwing the apple.  And, although Plaintiff alleges that he was in the compliance position when Defendant deployed the taser he does not specifically say that he did not attempt to spit on Defendant after assuming that position. Momentary compliance does not automatically make any further use of force unreasonable under the Eighth Amendment.  *See Curtis v. Christian Cnty., Ky.*, No. 5:20-CV-00055-TBR, 2022 WL 1651209, at *3 (W.D. Ky. May 24, 2022) ("[G]iven the undisputed facts leading up to the tasing— particularly, Curtis's admission that he was visibly upset and had just thrown feces all over the cell—the amount of force Burd used was reasonably related to the need for force, regardless of Curtis's momentary compliance."); *Roark v. Robertson*, No. 5:10-CV-147, 2011 WL 3813104, at *5 (W.D. Ky. Aug. 26, 2011) (granting summary judgment to defendants where Plaintiff's only allegation of excessive force was that he was tased twice while wearing handcuffs where evidence showed that he continued to be verbally abusive and had an object in his hand).

Accordingly, the Court holds that Plaintiff has failed to state a claim upon which relief may be granted against Defendant in his individual capacity.

### III. CONCLUSION

For the foregoing reasons, the Court will enter a separate Order dismissing this case.

Date: March 28, 2024

**Charles R. Simpson III, Senior Judge**
**United States District Court**

cc:   Plaintiff, *pro se*
      Defendant
4411.009

6